## EDWIN B. HARPHAM *et al.*

### *v.*

## CASSIUS G. WHITNEY.

1. MALICIOUS PROSECUTION. To maintain an action for malicious prosecution, it must appear that there was not probable cause for the prosecution, and also that the defendants were actuated by malice in instituting the prosecution.

2. SAME—*probable cause defined.* Probable cause is defined as such a state of facts, in the mind of the prosecutor, as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty. It does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution.

3. A belief of the guilt of the accused, founded on circumstances tending to show that he has committed a criminal offense, is sufficient to show probable cause.

4. SAME—*malice defined.* The term "malice," in this form of action, is not to be considered in the sense of spite or hatred against an indiv'dual, but of *malus animus,* as denoting that the party is actuated by improper and indirect motives.

5. SAME—*malice not inferred as matter of law merely from want of probable cause.* The question of malice is one of fact for the jury, and malice in no case is a *legal presumption* from the want of probable cause. It is true, the jury may infer malice as a matter of fact, under certain circumstances, from the want of probable cause. but it does not necessarily follow.

6. SAME—*malice, when inferred as a matter of fact.* To sustain the charge of malice, the criminal charge must be shown to be wilfully false. The facts ought to satisfy any reasonable mind that the accuser had no ground for the prosecution but his desire to injure the accused.

7. SAME—*malice, how disproved.* Where a party sued for malicious prosecution is unable to justify by proof of probable cause, he may still

rebut the presumption of malice by showing facts and circumstances calculated to produce at the time, on the mind of a prudent and reasonable man, a well grounded belief or suspicion of the party's guilt.

8. SAME—*malice not inferred from the fact that the prosecution was from information.* Malice will not be presumed from the fact that the prosecution was commenced without a personal knowledge of the facts. All that is required is an honest belief or strong ground of suspicion of the guilt of the accused, and a reasonable ground for such belief or suspicion, and that may be upon information from others as well as upon personal knowledge.

9. SAME—*evidence on question of probable cause and malice.* Where a State's Attorney was indicted for malfeasance in office and neglect of official duty, and was acquitted, and brought suit against the parties who caused the indictment to be found, for malicious prosecution, and one of the grounds of the criminal prosecution was, that the State's Attorney took a plea of guilty of certain parties indicted for a riot, and failed to bring the facts of the case to the attention of the court, showing the enormity of the offense, it was *held,* error to refuse to allow one of the parties thus sued for malicious prosecution, to testify as to the facts and circumstances in the indictment for riot, as communicated to him by the prosecuting witness in that case.

10. In a suit for malicious prosecution against a party who signed a petition for investigating certain charges against the plaintiff, which resulted in his indictment, it was *held,* error not to allow the defendant to state, as a witness, the facts that induced him to sign the petition, as the testimony had a bearing upon the question of probable cause and good faith.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

This was an action on the case, brought by Cassius G. Whitney against Edwin B. Harpham, Thomas Covington, Isaac Vail, Benjamin A. Rosebrough, Samuel C. Conwell, John W. Pitman, and twelve others, for an alleged malicious prosecution. The suit was brought in the circuit court of Mason county, and, on the plaintiff's application, the venue was changed to Menard county, and afterwards, on the motion of the defendants, to Morgan county.

The first count of the plaintiff's declaration, in substance, states, that he was State's Attorney, and practicing law in

Mason county, and had always sustained a good reputation, and conducted himself righteously, faithfully and honorably in the discharge of his duties, and was not guilty of any of the charges preferred against him, or suspected of the same, and had deservedly obtained the good opinion and credit of his neighbors and other good citizens in said county, but that the defendants, well knowing the premises, but greatly envying the happy state of the plaintiff, contriving and maliciously intending to injure his good name, etc., among his neighbors and others, and cause him to be suspected, as such State's Attorney and attorney at law, as having been guilty of offenses and misconduct against the laws of this State, and to injure, vex and ruin him, and cause him to be imprisoned, and to put him to great expense and thereby impoverish him, on the 30th day of June, 1870, at the circuit court of Mason county, State of Illinois, caused the plaintiff to be indicted for divers trespasses, felonies and other misdemeanors, setting out the indictment of the grand jury *in hæc verba,* charging the plaintiff with corruption in office, in accepting money from one Florence Bastain, charged with selling liquor without license, and in consideration thereof neglecting, corruptly, to prosecute said Bastain therefor, stating the impanneling of the jury, the trial and acquittal of the plaintiff, and charging the defendants with maliciously prosecuting the indictment to trial, etc., by means of which the plaintiff was compelled to expend large sums of money, to-wit: $1000, in his defense, and suffered great pain of body and mind, and was also hindered in business transactions for twelve months, and suffered damage in his feelings and credit, and was very much impoverished.

The second count charged the defendants with having falsely, wilfully, and without probable cause, procured the indictment of the plaintiff by the grand jury of Mason county, Illinois, setting out the indictment *in hæc verba,* in which the plaintiff was charged with unlawful, wilful and palpable neglect of duty in not having witnesses subpœnaed to attend for the trial of one William J. Chamblin, who was indicted in said

county for soliciting another to commit a felony, and negligently and unlawfully permitting the cause to be continued, which indictment was regularly returned into court by the said grand jury, and *nol pross'd* by the defendants, and plaintiff discharged.

The declaration was afterwards amended, setting forth that defendants maliciously prosecuted the plaintiff, and setting forth the petition signed by E. B. Harpham and fifty-four others, addressed to the Hon. Chas. Turner, judge of the 21st judicial circuit, and asking that Cassius G. Whitney be removed from his position as an attorney and counselor at law, and officer of that court, and be debarred the further privileges thereof, and that he be suspended from the discharge of his duties until the grand jury should be able to investigate the charges brought against him, which are, in brief: malfeasance, partiality, neglect and failure to recover and prosecute for moneys due on fines, etc.; failure to promptly prosecute; oppression of witnesses by causing them to be subpœnaed term after term, and keeping them in attendance, and negligently permitting the causes to be continued; taking sums of money from persons accused of crime, and *nol prossing* the indictments against the same, in accordance with wilful and corrupt agreements so to do; that he received and took money from one Obadiah Scott, in consideration of which he *nol pross'd* an indictment for horse stealing; that he received of Florence Bastain $75, and *nol pross'd* two out of four indictments, and allowed him to plead guilty to two, and be fined small amounts; that in consideration of money received from the accused and friends, he gave up evidences of indebtedness and *nol pross'd* an indictment against Samuel H. Elliot for forgery; that he compounded with Stilts and Pounds, who had been indicted for a riot; that he failed to prosecute certain persons indicted for the larceny of sheep, and oppressed witnesses by compelling their attendance for a great length of time unnecessarily; and that he failed to pay over money to the county superintendent of schools.

The defendants pleaded the general issue.  A trial was had, resulting in a verdict and judgment in favor of the plaintiff for $5000.

It appeared that Samuel C. Conwell was employed by the board of supervisors of Mason county in getting up the prosecution against the plaintiff, and acted under the advice of the circuit judge in getting up the petition.  He had before been employed to assist the plaintiff in prosecuting the indictment against Pounds and Stilts for riot.  He testified that, a short time after he was employed in the case, and while talking with the witnesses, he saw Whitney and the father of Pounds go into a little back room, and when they came back Whitney had the case settled by having defendants plead guilty, and having them fined $5 each; that the prosecuting witnesses were then in the court room, but were not called. The court refused to allow this witness to testify that Whitney called no witnesses and made no proof to the court of the nature of the offense.  The witness was then asked to "state to the jury what was the charge against Pounds and Stilts, and state the facts and circumstances of the alleged charge against them," as the same had been given him from the witnesses.

The court sustained an objection to the question, and refused to allow the same to be answered.

The defendants also offered to show that the prosecutions against Samuel Elliott were never brought to trial; that after the venue was changed to Menard county, each of them was stricken from the docket by leave of the court.  The court refused to let the record go to the jury, because these causes were disposed of subsequently to the presentment of the plaintiff.

The other material facts of the case are substantially stated in the opinion of the court.

, Messrs. MORRISON, WHITLOCK & LIPPINCOTT, for the appellants.

Messrs. DUMMER & BROWN, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action on the case for an alleged malicious prosecution. The case, in general, was this:

Appellee was State's Attorney of the 21st judicial circuit, in this State. The board of supervisors of Mason county, in said circuit, had employed two of the appellants, Conwell and Pitman, attorneys at law, to prosecute legal proceedings against appellee, on account of alleged official delinquencies, some of them affecting the interests of the county in respect of its revenues. In pursuance whereof, Conwell applied to the circuit judge of the circuit to ask his counsel in respect to the matter. The judge signified that the proper way might be to bring the matter before him by a petition signed by prominent citizens.

Accordingly, at the next term of the court, in June, 1870, a petition signed by sixty-one citizens of the county was presented to the court, containing sundry charges of official misconduct on the part of appellee, and six specific charges, and asking that, upon a hearing, appellee be removed from his position as attorney and officer of the court, and be suspended from the discharge of his duties as State's Attorney until the grand jury could investigate the charges, and that some one be appointed to conduct the investigation. The grand jury were brought into court, the petition submitted to them, and Mr. Pitman, one of the appellants, and a signer of the petition, was appointed special prosecutor.

The grand jury found two bills of indictment against the appellee, one of them for one of the specific charges, and the other not.

On one indictment, appellee was tried and acquitted; the other was *nol pross'd.* This action was brought against a large number of the signers of this petition, the appellants, in the circuit court of Mason county. The plaintiff took a change of venue to Menard county, and from there, on motion of the defendants, the venue was changed to Morgan county,

where a trial was had, resulting in a verdict and judgment against all of the defendants, for $5000 damages. The defendants appealed from the judgment.

They assign for error, the giving of instructions, the exclusion of testimony, and that the verdict was unwarranted by the evidence.

There were 27 instructions given for the plaintiff.

We are of opinion that in at least seven of them the jury were erroneously instructed upon the subject of malice; as, in the 3d, that "proof of want of probable cause is proof of malice;" in the 11th, that "malice is inferred in law" from the facts therein stated; in the 15th, that "the law imputes malice" from the circumstances therein stated; in the 19th, that, under the facts therein stated, the verdict should be for the plaintiff, saying nothing whatever in regard to malice; in the 20th, that "the law attributes malice to all persons who recklessly, and without probable cause to believe him guilty, charge and prosecute another with crime;" and in the 22d, to find for plaintiff, if defendants could have known he was not guilty of the charges by the exercise of that degree of care which a prudent and cautious man would have made—it not containing any requirement of malice.

To maintain an action for malicious prosecution, it must appear that there was not probable cause for the prosecution, and also that the defendants were actuated by malice in instituting the prosecution. There must be both want of probable cause and malice. If the law imputed malice from want of probable cause, then there would be no distinct requirement of malice, but want of probable cause would be the sole element necessary. It is often said, the jury may infer malice from the want of probable cause. They may do so under certain circumstances, but not in all cases. Malice is in no case *a legal presumption* from the want of probable cause, it being for the jury to find from the facts proved, where there was no probable cause, whether there was malice or not. 1 Hilliard on Torts, 486. And if the defendant can not justify by proof

of probable cause, he may still rebut the presumption of malice by showing facts and circumstances calculated to produce at the time, on the mind of a prudent and reasonable man, a well-grounded belief or suspicion of the party's guilt. Ibid. 515.

Instruction 26 is as follows:

"The jury are further instructed, that mere rumor that a person is guilty, or has been guilty, of the commission of a crime, is not sufficient to warrant the institution of a criminal prosecution, but that a party charging another with the commission of a crime, must act upon facts or circumstances within his knowledge, sufficient to induce the belief, in the mind of a cautious man, of the guilt of the person charged with crime."

We regard this instruction as erroneous. There is no such doctrine of the law so in discouragement of its own enforcement, that one can so act, as in the instruction named, only upon personal knowledge, and not upon information.

A citizen having reason to believe, or entertain a strong suspicion, upon information or popular report, that a crime has been committed, must be permitted to appear and direct the attention of the grand jury toward its investigation, without exposure to the peril—in case of a failure of conviction, or it turning out that the information upon which he acted was not founded in fact—of being held liable for malicious prosecution, and of being mulcted in ruinous damages. The criminal law does not enforce itself. It requires the agency of some informant to put it in execution. There would be little of efficiency of execution of much of our criminal law, as, for instance, the laws for the suppression of gambling, the unlawful sale of intoxicating liquors, the keeping of houses of ill-fame, and the like, if those only might move with impunity in the matter of their enforcement, who had actual cognizance of the infraction of the law. Such persons, from motives of one kind or another, are rarely found to be voluntary helpers

in the administration of such laws. Whatever aid comes from that source, is, for the most part, an enforced one, under the compulsory power of legal process to appear and testify. All that is required is an honest belief, or strong ground of suspicion, of the plaintiff's guilt, and a reasonable ground of the belief or suspicion; and that may be upon information from others, as well as personal knowledge. *Murray* v. *Long,* 1 Wend. 140; *Bacon* v. *Towne et al.* 4 Cush. 217; *Foshay* v. *Ferguson,* 2 Denio, 617.

The objections to the exclusion of testimony we regard as well taken. Appellant Conwell was not allowed to state what were the facts and circumstances of the charge in the indictment against Pounds and Stilts, as communicated to him by the prosecuting witness. We think appellants were entitled to this evidence, as bearing directly upon the question of probable cause and malice; and in this connection, appellee's 11th instruction may be noticed, which seems to assume that the record of the conviction of Pounds and Stilts was conclusive upon appellants, and entitled appellee to a verdict as to that charge; whereas, that record shows nothing as to the charge in the petition really intended to be made in that respect, which was, not that there had been a failure to prosecute that indictment to a conviction, but to bring before the court the evidence of the facts of the offense, after a plea of guilty had been entered, so that such a punishment might be imposed as the offenders deserved. And so in regard to other records of the disposition of other indictments connected with other charges made, the instructions improperly lay undue stress upon them as evidencing want of probable cause, and malice. All the matters of complaint were transactions *in pais,* which would not appear by the records.

So, too, as to the exclusion of the offered testimony of the witness and appellant, Rosebrough, to state in regard to a certain matter that caused him to sign the petition. He should have been allowed to state the same, as bearing upon the question of probable cause and good faith. A liberal latitude

should have been allowed to appellants in stating the grounds of suspicion upon which they acted.

The offered evidence in regard to the disposition of the Elliott indictments, we think, too, should have been admitted.

As respects the case on the evidence, all the testimony which appears in the record on the part of the appellee, is the petition, the appearance of Pitman. under the appointment of the court, before the grand jury, and appellee's testimony that there was no foundation in fact for the charges in the petition.

On the part of the appellants, there was evidence, which need not be particularized, tending to raise ground of suspicion with respect to all except, perhaps. one of the charges— that previous to the preparation of the petition, there had been communicated to the attorneys who prepared it, facts and circumstances affording ground of suspicion of the truth of the charges.   None of the signers of the petition were in anywise personally connected with the subject of the charges, and could not be supposed to have personal knowledge with respect to them.   There existed such reasonable ground of suspicion, that the board of supervisors. as guardians of the interests of the county, had deemed it their duty to take official action, and they employed legal counsel to prosecute an investigation of the subject.   Before taking any action, one of the counsel had an interview with the circuit judge upon the subject, and it was understood to meet the views of the judge that the matter should be brought before the court by petition signed by prominent citizens of the county.   This fact was communicated to the parties who signed the petition. Not one of the appellants besides Pitman and Conwell. did anything further than to sign the petition.

We are of opinion that there is no legal inference of malice in this case.   The law is not so unjust as to impute malice where none exists.

Interested citizens, acting in good faith and upon reasonable ground of suspicion, must be allowed the freedom of inquiring into and asking to have investigated the alleged official misconduct of their public servants.

Probable cause is defined as such a state of facts, in the mind of the prosecutor, as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion that the person arrested is guilty. *Bacon* v. *Towne et al.* 4 Cush. 217. It does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution. *James* v. *Phelps*, 11 Ad. & El. 483, 489; *Foshay* v. *Ferguson, supra.*

A belief of the guilt of the accused, founded on circumstances tending to show that he has committed a criminal offense, is sufficient to show probable cause. *Jacks* v. *Stimpson*, 13 Ill. 702.

The question of *malice* is for the jury, and, to sustain this averment, the charge must be shown to have been wilfully false. 2 Greenlf. Ev. Sec. 453; 1 Hilliard on Torts, 514.

In *Williams* v. *Taylor*, 6 Bing. 186, it was said, by TINDAL, C. J., upon this subject: "The facts ought to satisfy any reasonable mind that the accuser had no ground for the proceeding but his desire to injure the accused."

And in *Mitchell* v. *Jenkins*, 5 B. & Ad. 594, by PARKE, J.: "The term *malice*, in this form of action, is not to be considered in the sense of spite or hatred against an individual, but of *malus animus*, and as denoting that the party is actuated by improper and indirect motives."

By some of appellee's instructions, the jury were told that, if the defendants could have known, by the exercise of reasonable prudence, that the plaintiff was not guilty of the charges made against him, the law presumes that they acted from malicious motives.

It was held, in *McGurn* v. *Brackett*, 33 Me. 331, in reference to this same question, that "the want of due care and a

reckless design to accomplish an object, regardless of the rights of others, do not necessarily constitute malice."

We regard the instructions as improper under any circumstances to be found in the present case.

There is nothing in the evidence denoting that appellants were actuated by any malicious, improper, indirect or sinister motive; or that they acted otherwise than from a public motive to secure an investigation of supposed official misconduct of a public officer.

Under the law applied to the facts disclosed in this record, we are of opinion that there is a clear failure to make out, against these appellants, a case of malicious-prosecution.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*