## Alfred A. Smith v. Michigan Buggy Company.

1. MALICIOUS PROSECUTION—*Requisites of the Action.*—To the maintaining of an action for malicious prosecution two things must concur : First, a want of probable cause, and second, malice.

2. SAME—*Enticing Another into a Foreign Jurisdiction for Service.*— A mere enticement into another State, where there is detention of neither person nor property, will not support an action for malicious prosecution.

3. SAME—*Civil Suits.*—The action of malicious prosecution can not be maintained for the mere bringing of one civil suit.

4. MALICE—*May be Inferred.*—Malice may be inferred from a want of probable cause, but a want of probable cause can not be inferred from malice.

**Trespass on the Case,** for malicious prosecution. Error to the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed November 5, 1896.

### STATEMENT OF THE CASE.

This was an action on the case brought to recover damages for an alleged abuse of judicial process and the malicious institution and prosecution of a civil suit without probable cause.

In July, 1891, the plaintiff entered into the employ of the defendant for a period of eighteen months, under a written contract of employment. The plaintiff's residence was at Chicago, in the State of Illinois, and he was required by his contract to travel in the State of Illinois, which he proceeded to do. About the first of February, 1892, the defendant was desirous of abrogating this contract. Thereupon the defendant telegraphed to the plaintiff, who was at Chicago, to come to Kalamazoo, Michigan, which was where the defendant was located. The plaintiff did as instructed. Upon his arrival at Kalamazoo, he went to the factory and office building of the defendant, and was seated in an outer office, separated from the inner or private office, where the president and secretary and treasurer of the defendant company were seated, engaged in their ordinary duties. The plaintiff

was seen by them through the glass partition; they nodded to him, but did not ask him in. He sat down in a chair. The president of the defendant stepped to the telephone, called up somebody and had some conversation. A short time thereafter the sheriff of Kalamazoo county, Michigan, entered the office and inquired for the plaintiff. The plaintiff responded to the inquiry, whereupon the sheriff served him with a summons in an action wherein the present defendant was plaintiff and the present plaintiff was defendant, in which the Buggy Company asked $3,000 damages. Immediately upon the departure of the sheriff the president of the defendant company opened the door of the private office and asked the plaintiff in. The plaintiff stepped in with the summons in his hand, and said, " Gentlemen, what does this mean ? " to which the president replied : " I guess you will find out." The secretary and treasurer then said, " Well, we made up our minds that we were going to have a fight with you, and we thought we would get in the first blow." They went on to say that their contract with the plaintiff had not been as profitable to them as they expected it to be, they had lost money by it, and proposed to see if they could not get it back; but that if the plaintiff would release them from their contract they would dismiss the suit. The plaintiff refused to do it, and went to his hotel. In the evening of the same day the president of the defendant called upon him at his hotel, and again urged him to release them from the contract, in which case they would dismiss the suit. The plaintiff again declined to do it, and came back to Chicago. The defendant thereupon filed its declaration against the plaintiff herein, the principal allegation in which was, that the plaintiff had obtained his contract from the defendant by fraudulently representing that he had sold during the two years immediately preceding the date of his contract, sixty thousand to sixty-five thousand dollars worth of buggies and carriages per year during each of said two years, which was false, and that by reason of this false and fraudulent allegation it had employed him, to defendant's damage, which it sought to recover. The case

in Michigan came on for trial before a court and a jury, and resulted in a verdict and judgment for the defendant therein. In that action the sum of $74.70 costs were taxed against the Buggy Company, and paid by them. The plaintiff also paid for attorney's fees and other necessary expenses in and about the defense of said action, the sum of $246, and lost some time.

In the present action, at the conclusion of the plaintiff's evidence, the defendant moved the court to take the case from the jury, first, for the reason that the plaintiff not having been arrested or his property seized, the suit was not maintainable; second, upon the ground that the evidence did not show want of probable cause for the institution by the Buggy Company of its suit against the plaintiff herein; which motion was sustained.

Smith, Shedd, Underwood & Hall, attorneys for plaintiff in error.

An action lies for the abuse of judicial process. Wanzer v. Bright, 52 Ill. 35.

And this is as true of civil as of criminal process. Pope v. Pollock, 46 Ohio St. 367, 21 N. E. Rep. 356; Antcliff v. June, 81 Mich. 477; Jaggard on Torts, 632–634; Alderson on Judicial Writs and Process, Sec. 126.

Decoying a defendant into a foreign jurisdiction for the purpose of there serving him with process from a foreign court is an abuse of legal process, for which an action will lie. Wanzer et al. v. Bright, 52 Ill. 35; Alderson on Judicial Writs and Process, Sec. 126.

To institute an action or prosecution for the purpose of compelling a defendant to surrender his legal rights or property, or for any indirect purpose, is, in itself, malicious in law. Harpham v. Whitney, 77 Ill. 32; Krug v. Ward, 77 Ill. 603.

An action on the case will lie for the malicious prosecution without probable cause of a civil action, irrespective of whether or not there has been any interference with the person or property of the defendant. In such an action

actual damages are recoverable. ˙ Gorton v. Brown, 27 Ill. 489; Lawrence v. Hagerman, 56 Ill. 68; Payne v. Donegan, 9 Ill. App. 566; Vanduzor v. Linderman, 10 Johns. 106 (N. Y., 1813); Pangburn v. Bull, 1 Wend. 345 (N. Y., 1828); Whipple v. Fuller, 11 Conn. 582 (1836); Cox v. Taylor, 10 B. Mon. 17 (Ky. 1849); Closson v. Staples, 42 Vt. 209 (1869); Marbourg v. Smith, 11 Kas. 554 (1873); Woods v. Finnell, 13 Bush. 629 (Ky. 1878); Hoyt v. Macon, 2 Colo. 113 (1873); Juchter v. Boehm, 67 Ga. 534 (1881); O'Neil v. Johnson, 53 Minn. 439, 55 N. W. Rep. 601 (1893); McPherson v. Runyon, 41 Minn. 524 (1889); Pope v. Pollock, 46 Ohio St. 367, 21 N. E. Rep. 356 (1889); Eastin v. Bank of Stockton, 66 Cal. 123 (1884); Allen v. Codman, 139 Mass. 136 (1895); McCardle v. McGinley, 86 Ind. 538 (1882); Smith v. Burruss, 106 Mo. 94 (1891); Antcliff v. June, 81 Mich. 477 (1890); Johnson v. Meyer, 36 La. Ann. 333 (1884); Lipscomb v. Shofner (Tenn.), 33 S. W. Rep. 818 (1896).

MEEK, MEEK & COCHRANE, attorneys for defendant in error.

The action will not lie. It is conceded in this case that neither the person nor the property of the appellant was seized in the proceedings against him, which then gives rise to this question:

Will malicious prosecution lie in a case where a civil action was brought, where the person of the defendant in the original suit was not seized, nor where his property was neither directly nor indirectly seized or molested by the litigation? Gorton v. Brown, 27 Ill. 489; Payne v. Donegan, 9 Ill. App. 566; Crate v. Kohlsaat, 44 Ill. App. 274.

The courts have said that the courts of the law are open to every citizen, and that the costs which the defendant gets are a compensation for the wrong. If every suit may be retried upon the allegation of malice, the evil would be intolerable, and the malice in each subsequent suit would likely to be greater than in the first, and that if the defendant sought to have damages by a false claim, that the plaintiff ought to have damages on a false plea, which would make

litigation interminable.    Newell on  Malicious  Prosecutions, 36, Sec. 26;  Am. Leading  Cases, 218, Note to Mums
v. Du Pont;  Meyer v. Walter, 64 Pa. St. 289;  Kramer v.
Stock, 10 Watts, 115;  Bitz  v. Meyer, 11 Vroom, 252;  S. C.,
29 Am. Rep. 233;  Eberly v. Rupp, 90 Pa. St. 259;  Gorton v.
Brown, 27 Ill. 489.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE
COURT.

To the maintaining of an action for malicious prosecution, two things must concur:  First, that there was a want
of probable cause for the prosecution;  second, that it was
malicious.

Malice may be inferred from a want of probable cause,
but want of probable cause can not be inferred from malice.
The result of the action in Michigan establishes that the
plaintiff therein had not a good cause of action, but does
not establish that such plaintiff did not have probable cause.
Harpham et al. v. Whitney, 77 Ill. 32;  Wade v. Walden, 23
Ill. 425.

Upon the trial of the present action, the plaintiff testified that prior to his employment by the defendant, he wrote
to them as follows: ·

"JUNE 8, 1891.

Hon. M. H. Lane, Kalamazoo, Mich.

DEAR SIR:  Since talking with you Friday, I have given
the matter then under consideration a good deal of thought
and deem it best to give you my conclusions at some length
so that you may not think I fail to appreciate your courtesy.

My object in applying to you in the first place was to
ascertain if you did not have an opening for a manager of
your Chicago branch.  I understood indirectly that there
was such an opening, and I felt that with my experience
and knowledge of the carriage business I was qualified to
fill the position satisfactorily to your company and with
credit to myself.  You made other arrangements, and the
question of traveling on the road came up.

While in the employ of the Abbott Buggy Company I

traveled Illinois from the 10th of July, 1889, to the 15th of September, 1890, inclusive, and my sales aggregated $61,753.50 from personal solicitation; much of my time during this period was put in in the office, so that a close canvass of my territory was not possible.

The carriage business is my chosen business, and other things being equal, I would prefer it to anything else. It is a business that I know something about, and it is congenial; but if my services on the road or off of it are not worth $1,800 a year, as evidenced by my past success, the fault is in the business and not in me, and the sooner I divorce myself from it the better off I shall be."

Appellant also testified as follows:

" Q.  Did you send a letter from Mr. Abbott with that letter?

" A.  I did, and mailed it to the Michigan Buggy Company. It was in reference to my ability as a salesman. The purport of it was that I had been employed by the Abbott Buggy Company and was a first class salesman."

Plaintiff was thereafter employed as a traveling salesman for two years, at a salary of $1,500 and expenses for the first year, and $1,800 and expenses for the second year.

The declaration of the Michigan Buggy Company, in the action by it brought, set forth, among other things, that prior to the employment by it of appellant, he represented to it that he had been engaged by the Abbott Buggy Company in canvassing for and selling the buggies and carriages of the said Abbott Buggy Company in the State of Illinois, to different customers and persons, throughout the said State, and that during each of said two years he had sold for the said Abbott Buggy Company to different persons and customers throughout the State of Illinois, buggies and carriages of the market value as sold by him, of from $60,000 to $65,000 worth each year. And that he was well acquainted with the trade in said State of Illinois, in which he had been selling buggies and carriages; that the parties with whom he had been dealing for the aforesaid two years in the selling of said buggies and carriages were his friends

and acquaintances, and that he controlled their trade in that line of business, and that by reason of his controlling their trade, he could, if plaintiff would employ him, procure such friends and acquaintances to purchase of plaintiff instead of said Abbott Buggy Co., its goods, buggies and carriages to the extent of $60,000 to $65,000 per year; that he was a first class salesman of buggies and carriages, and that he could sell more in said territory of Illinois than an ordinary salesman could, and that if the said plaintiff would employ him, he would procure his aforesaid friends and acquaintances to purchase plaintiff's goods; all of which representations and statements made by the said defendant the said plaintiff, to wit, at the time aforesaid, believed to be true.

Plaintiff avers that from its experience the usual cost of selling goods manufactured by it is from five to eight per cent of the selling price; that the salary agreed to be paid by it to the said defendant in said written contract was a large salary for a first class salesman or traveling man in that particular line of business. That after making the said contract, defendant commenced his labors thereunder; that he continued thereafter for the space of, to wit, seven months, during which time the defendant sold for said plaintiff buggies and carriages of the market value of not to exceed, to wit, $3,500.

That during said time plaintiff paid to said defendant under its aforesaid contract a large sum of money, to wit, the sum of $2,000. Plaintiff further avers that the same was paid upon the belief on the part of the plaintiff that the representations and statements of the said defendant hereinbefore set forth, and which were the inducements upon which said contract was founded, were true, and it had no further information upon the subject but that the same were true as stated. And the plaintiff avers that such statements so made by the said defendant to the said plaintiff, as aforesaid, for the purpose of obtaining the aforesaid employment, and for the purpose of obtaining by defendant his salary and expenses of such employment, were not in fact true.

Upon the trial of the present action, appellant testified in reference to how the amount claimed by him to have been sold by him for the Abbott Buggy Co. was made up.

" Q. Now, when a man came in from anywhere and goods were sold by you in the house, you called that a sale too, did not you, by you ? A. Yes, sir, I think I did and put that into the $61,000. I did not put it in if any one else immediately under me made the sale. When I had my talk with Mr. Lane about my employment, I did not tell him that these orders that were sent in there or where I was sent out to make special sales were credited to me as part of the sales. I did not say anything about that feature of it."

Appellant did not, upon the trial of this case, show that the Michigan Buggy Company had not probable cause for bringing its action.

The only question then left for consideration is, whether appellant can recover for having, as he says, been enticed into the State of Michigan in order that process might there be served upon him.

We are not aware of any precedent for such an action.

It has been well said that the absence of and precedent for a particular action, is strong evidence that it is not maintainable.

It is manifest that if appellant can maintain an action for such enticement, the suit would have been well brought, although in the action in Michigan it had been found that the Michigan Buggy Company had a good cause of action, and had obtained judgment against him.

Malice alone will not support an action for malicious prosecution; neither will a mere enticement into another State where there is detention of neither person nor property. The weight of authority is, that an action for malicious prosecution can not be maintained for the mere bringing of one civil suit. Newell on Malicious Prosecution, 3, Secs. 1 and 36; Cooley on Torts, Ed. of 1879, 180; Meyer v. Walter, 64 Pa. 289.

The judgment of the Circuit Court is affirmed.