## Silas D. Clark v. Albert Hill.

1. Malicious Prosecution—*Requisites of a Recovery.*—In order for the plaintiff in an action for malicious prosecution to recover, it is necessary for him to prove that the defendant acted, in causing his arrest, both maliciously and without probable cause.

2. Instructions—*In Actions for Malicious Prosecution.*—An instruction in an action for malicious prosecution, which tells the jury that the information which will justify the making of a criminal com-

plaint against another for the purpose of having him arrested must be of such a character and obtained from, such sources that business men generally, of ordinary care, prudence and discretion, would feel authorized to act upon it under similar circumstances, is not proper under the rule in this State.

Trespass on the Case, for malicious prosecution. Appeal from the Circuit Court of Ogle County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the April term, 1901. Reversed and remanded. Opinion filed July 12, 1901.

W. J. EMERSON and H. A. SMITH, attorneys for appellant.

FRANCIS BACON, attorney for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This is an action for malicious prosecution brought by appellee against appellant in the Circuit Court of Ogle County. Appellant pleaded the general issue, the case was heard before a jury and there was a verdict and judgment in favor of appellee for $400. Appellant urges as error, among other things, "the exclusion of proper evidence offered on the part of the defendant, the admission of improper evidence offered on the part of the plaintiff and the giving of improper instructions to the jury at the instance of the plaintiff."

It appears from the evidence that on the evening of October 27, 1899, appellant settled in full with appellee, a young man then nineteen years of age, who had been in his employ for about four weeks, and discharged him, permitting him, however, to remain at the house that night. In the morning, at about six o'clock, after he had eaten his breakfast, appellee took a lantern and started for the barn. He was met by appellant, who had preceded him, who said, "Albert, I have the chores done; there is no need of your lighting the light." Appellee, however, went on to the barn saying he would turn out the horses. About that time appellant, who was a carpenter as well as a farmer, left home and went to work upon a church building some miles distant. Shortly after appellant's departure, appellee left the premises, taking with him one of appellant's horses, and rode to

the home of Mrs. Pfetsing, who lived between a quarter and a half mile distant. Mrs. Pfetsing, on being informed that appellee was there, sent word to him to put the horse in the barn and to come in and help load a wagon. Almost immediately after appellee's departure, the wife of appellant discovered the horse was gone, and at once went to the residence of her brother, Dudley Reed, three quarters of a mile distant, and asked a son of the latter, Claude, to go over to Mrs. Pfetsing's and see if the horse was there. Claude went to the place to which he was directed, found the horse in the stable and brought it home. Appellant's wife and Dudley Reed, who had gone to appellant's premises and examined the surroundings, then went to the church where appellant was at work and told him that the horse had been stolen; that they had gotten it back; that Albert Hill had taken it; that he went up through the timber, pulled out a post and went out into the road and then went still further on until he went into a gate that led into Mr. Hunt's pasture. Dudley also told him of certain tracks of a man and horse he had found and said that appellee ought to be arrested. Thereupon appellant went before a justice of the peace and swore out a warrant for appellee's arrest upon a charge of horse stealing. Appellee was arrested and when brought before the justice appears, from the evidence, to have confessed that he was guilty of stealing the horse and was thereupon bound over to await the action of the grand jury. Failing to give bond he was committed to the county jail, where he was confined from October 28, 1899, to January 4, 1900, when he was released, the grand jury having failed to find a true bill against him.

The mistake made by appellant, if he made any, was in charging appellee with the wrong offense. It is clear from the evidence that even if appellee was not guilty of stealing the horse, yet he was guilty of a misdemeanor under section 204 of the criminal code, in taking and riding the horse in question without the consent of the owner. Under such circumstances the instructions should have stated the law with great particularity.

The first instruction given for appellee told the jury that he was entitled to a verdict if they found from the evidence that " the defendant without probable cause, or maliciously " caused his arrest and imprisonment as charged in the declaration. This instruction was plainly wrong, as in order to entitle appellee to a recovery, it was necessary for him to establish affirmatively that appellant acted both maliciously and without probable cause. Harpham et al. v. Whitney, 77 Ill. 32; Knickerbocker Ice Co. v. Scott, 76 Ill. App. 645.

The ninth instruction given for appellee told the jury that "the information that will justify the making of a criminal complaint against another for the purpose of having him arrested, must be of such character and obtained from such sources that business men generally, of ordinary care, prudence and discretion, would feel authorized to act upon it under similar circumstances." It is true this instruction appears to have had the sanction of the Supreme Court of Michigan in Livingston v. Burroughs, 33 Mich. 511, but such is not the rule in this State. Plaintiff was only required to act upon the information given him in the same manner as men of ordinary care, prudence and discretion would have felt warranted in acting under similar circumstances. Farmers are not known as " business men " in the ordinary acceptance of the term. The rule laid down in the instruction would have required appellant to have acted, not as the general run of ordinary prudent men would have acted under similar circumstances, but as a man selected from the class known as " business men " would have acted under such circumstances. For this reason the instruction was improper and should not have been given.

In his examination appellant testified that Dudley Reed told him that appellee took the horse out through a wire fence and described the condition of the fence at the place where he said the wires were taken down and a post drawn up. He also testified that Reed told him the horse was taken through the wire gate into Hunt's pasture and that

there were certain tracks there. At the conclusion of appellant's testimony, counsel for appellee moved to strike from the record "all evidence offered touching the condition of the fence where it is claimed that the wires were taken down and the post drawn up and also the gate leading up into Hunt's pasture." This motion was sustained by the court over the objection of appellant's counsel and such evidence stricken from the record. This ruling of the court was wrong as the motion was broad enough to include not only the testimony in regard to the actual condition of the fence and gate, but also what was said by Reed to appellant concerning the same. All that was said to appellant concerning the matter just previous to the arrest of the boy, was entirely proper as showing the information upon which he acted.

We are also of opinion that the court erred in permitting appellee to testify in his direct examination over the objection of appellant that at the time he rode the horse over to Mrs. Pfetsing's, he did not intend to steal it. Such evidence might have been proper in rebuttal of an attempt by appellant to show that appellee had in fact stolen the horse, but was improper on direct examination before any such attempt was made.

For the reasons above given the judgment of the court below will be reversed and the cause remanded.