### H. A. Six, Appellee, v. A. W. Sikking, Appellant.

1. MALICIOUS PROSECUTION—*what defense to action of. Held,* under the circumstances shown by the evidence in this case, that the disclosure made to counsel in good standing together with the facts established were such as to exclude the inference of malice.

2. MALICIOUS PROSECUTION—*when instruction as to liability erroneous.* An instruction which tells the jury that to constitute probable cause for a criminal prosecution there must be a reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused was guilty of the offense charged, is erroneous; the word "reasonably" should have been inserted to qualify the word "cautious."

3. INSTRUCTIONS—*submission of questions of law.* An instruction which leaves to the jury to determine the "material" facts is improper as leaving to the jury the determination of questions of law.

4. INSTRUCTIONS—*estoppel to complain.* A party is estopped to question inaccuracies in instructions where he has caused the court to give instructions containing like inaccuracies.

Action in case. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1910. Reversed and remanded. Opinion filed October 18, 1910.

FRANK L. HATCH and HAMILTON & CATRON, for appellant.

W. W. SHELLEY and W. ST. J. WINES, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case brought by appellee against appellant for alleged malicious prosecution. The jury returned a verdict in favor of appellee and assessed his damages at the sum of $900. Judgment was rendered upon such verdict, from which this appeal is prosecuted.

The first count of the declaration charges, in brief, that the defendant, without probable cause, procured an indictment by the grand jury to be returned and caused the defendant to be arrested and deprived of his liberty for one day, and to give bail and to be placed on trial under such indictment. It is further alleged that upon such trial the jury returned a verdict finding the plaintiff not guilty, and the said prosecution was wholly ended and determined. The second count charges that the defendant, without probable cause, charged the plaintiff with having committed larceny as bailee, and procured him to be arrested and imprisoned for the space of one day, whereby in order to regain his liberty he was compelled to furnish bail in the sum of $500; that upon a trial by jury for such supposed offense he was duly acquitted and discharged.

The evidence shows that appellee was indicted by the grand jury of Sangamon county, at the January term, 1909, for larceny as bailee. The indictment charged that he fraudulently and feloniously converted to his own use, with intent to steal the same, one horse, one wagon and one set of harness, of the goods and chattels of the appellant; that he was thereafter arrested on said charge and imprisoned in the county jail for an hour or two, until he had given bail for his appearance for trial; that in March, 1909, he was tried upon said indictment and acquitted; that no further prosecution on said charge had been had, and that he had paid an attorney the sum of $50 for defending him.

The evidence, briefly stated, discloses the following facts: Appellant was a dealer in farm implements. Appellee dealt in horses and conducted a livery barn. Both reside and did business in the city of Springfield. On September 26, 1908, appellant and appellee entered in to a written contract which provided that appellant should turn over to appellee two horses, a wagon gear and a set of harness, then in the possession of appellee and upon which appellant had a chattel mortgage which he was threatening to foreclose; said contract further provided that the property was to be retained and cared for by appellee at the expense of appellant, for the period of sixty days; that if appellee found a purchaser for the property within such time he should be entitled as commissions for his services, to any excess of the purchase price received over the sum of $140, and that if no sale was made within said sixty days, the property was to be returned to appellant. Appellee being unable to dispose of the property for cash, negotiations were had between the parties toward trading the same for a jack, but the same were unsuccessful. On December 1, appellee sold his business to one Shelton, who took possession on December 6. Shortly prior thereto appellee had rented one of the horses to one Glenn, and while in the possession of Glenn said horse was so injured that it bcame necessary to kill it. Appellee testified that immediately thereafter he informed appellant of such fact, and that after he turned over the barn to Shelton, he never had possession of appellant's property; that prior thereto he informed appellant that Shelton was to take charge of the barn; that the property would be there and appellant could get it at any time he desired, and that this arrangement was satisfactory to appellant. Appellant denied that appellee ever reported to him the death of the horse. One Boblett, an employe of appellant, who visited the barn several times while the proposed trade for the

jack was pending, testified that upon his third visit appellee told him the horse was dead, but that he did not inform appellant. Appellant thereafter sent one Myers, another of his employes, to the barn after the property. Myers reported to him that he could not find the property there and that appellee had informed him that one of the horses was dead. A few days later the other horse was left by some one at appellant's place of business, but he never received the rest of the property nor learned its whereabouts.

Thereafter, on January 4, 1909, appellant wrote appellee a letter expressing disbelief in the story that one horse was dead, and demanding immediate return of the other horse, wagon and harness. Failing to receive the property, appellant consulted one Weaver, an attorney and justice of the peace, stating the foregoing facts and that he had sent down for the property and was unable to find it, and could not get any information from appellee as to what had become of it, and inquired whether he could secure the property by replevin. Weaver advised him that he could not, if he did not know its whereabouts, and also advised him, as an attorney, that under the circumstances appellee was guilty of larceny as bailee. It was then suggested by one or the other that a warrant be sworn out, but Weaver advised that the state's attorney be first consulted, and afterward himself consulted the assistant state's attorney. Shortly thereafter, appellant was called to the state's attorney's office, and claims to have there related to him and his assistant the history of this affair and his efforts to recover the property, including the report that one horse had died. Both the state's attorney and his assistant thereupon advised appellant that under the facts as stated, appellee was guilty of larceny as bailee and directed appellant to go before the grand jury then in session. Appellant was afterward taken before the grand jury by the assistant state's attorney, and there

repeated his former statement of the facts. Appellee
was indicted for larceny as bailee of the missing prop-
erty in question. Subsequently, upon his trial, appel-
lant was again called and testified to the same facts
as stated by him to the state's attorney and the grand
jury. There is evidence tending to show that on
neither of these occasions did appellant state all of
the facts within his knowledge, but that he stated those
that he regarded as material. The evidence further
shows that the state's attorney, his assistant, and
Weaver, were all attorneys of good standing in the
community, at the time they severally advised appel-
lant that appellee was guilty of larceny as bailee.
There was also evidence tending to show that the gen-
eral reputation of appellee in the community, for hon-
est and fair dealing in business, at the time of the
transaction, was bad.

At the close of the plaintiff's evidence, and again at
the close of all the evidence, appellant moved the court
to direct a verdict of not guilty, on the ground that
there was no sufficient evidence tending to prove the
charges of malicious prosecution. We think there was
evidence tending to prove the plaintiff's case, and the
trial court did not err in submitting the issues of fact
to the jury. A majority of the court have, however,
arrived at the further conclusion that the finding of
the jury that malice and want of probable cause were
established by the greater weight of the evidence, was
not warranted by the evidence, and was manifestly
contrary thereto, and that the judgment should for
this reason be reversed and the cause remanded for
another trial. We are constrained to believe that the
conduct of appellee during the entire transaction was
such as to create a strong suspicion that he was not
acting in good faith toward appellant in their deal-
ings, and while he was not shown to have been guilty
of the offense for which he was indicted and tried,
we think that the facts and circumstances within the

knowledge of appellant at the time he made complaint
to the state's attorney, together with the inferences
fairly and reasonably deducible therefrom, were suf-
ficient in themselves to warrant a reasonably cautious
person in the belief that appellee, while in the posses-
sion of the property as bailee, had fraudulently con-
verted the same to his own use.

By plaintiff's third instruction the jury was told
that to constitute probable cause for a criminal pros-
ecution, there must be a reasonable ground for sus-
picion, supported by circumstances sufficiently strong
in themselves to warrant a cautious man in the be-
lief that a person accused was guilty of the offense
charged. We think the rule is incorrectly stated, in
that the word "cautious" should have been qualified
by the adjective "reasonably" or some equivalent
word. The standard fixed is higher than the law re-
quires. The policy of the law is to encourage prosecu-
tions where there are facts and circumstances that
would induce the belief in the mind of a reasonably
cautious man of the guilt of the party accused. Mur-
phy v. Larson, 77 Ill. 172. Probable cause is defined
as such a state of facts in the mind of the prosecutor,
as would lead a man of ordinary caution and pru-
dence, to believe or entertain an honest and strong
suspicion that the person arrested is guilty. Harp-
ham v. Whitney, 77 Ill. 32.

The fourth instruction given at the request of the
plaintiff informed the jury that before the defendant
could shield himself by the advice of counsel, it must
appear from the evidence that he made, in good faith,
a full, fair and honest statement of all the material
circumstances bearing upon the supposed guilt of the
plaintiff, which were within the knowledge of the de-
fendant, or which the defendant could by the exercise
of ordinary care have obtained, to a reputable attor-
ney in good standing, and that the defendant in good
faith acted upon the advice of said attorney in insti-

tuting and carrying on the prosecution against the plaintiff.

Plaintiff's fifth instruction was to the effect that if the jury believed from the evidence, that at the time the defendant talked with his attorney, Bernard, he withheld from Bernard material facts within his knowledge, or which in the exercise of common prudence he might have known, then the fact that Bernard may have advised the defendant to prosecute the plaintiff, could not avail the defendant as a defense to this suit.

It is insisted that the foregoing instructions do not correctly state the law; that it is not essential that the defendant in an action of this character, in order to justify himself in commencing a prosecution, must show that he exercised ordinary care or common prudence to ascertain all the facts bearing upon the supposed guilt of the plaintiff, but that the whole duty of the defendant is performed when he honestly states all the facts and circumstances within his knowledge. An instruction identical with the fourth instruction was approved in Roy v. Goings, 112 Ill. 656. It was therefore not error to give the same, nor the fifth, which is substantially similar. While these instructions were misleading in that they refer to "material" facts without disclosing to the jury what facts as a matter of law were material, and in following them the jury might have concluded that some particular fact was or was not material to be stated, when the contrary was true, appellant is estopped to question the inaccuracy in this respect, for the reason that a like error appears in his fourth modified instruction, both as originally submitted, and as given.

For the reasons stated, the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*