## Oby Dawson, Appellee, v. St. Louis Smelting and Refining Company et al., Appellants.

1. APPEAL AND ERROR—*sufficiency of objection to preserve question.* In an action for malicious prosecution, where the only objection made to the introduction in evidence of the record of the proceeding out of which the action grew was that the restraining order entered by the court and which plaintiff was charged with violating was not offered in connection with the record, appellants cannot urge that the only purpose for which the record was admissible was to show the termination of the litigation.

2. MALICIOUS PROSECUTION—*admissibility of record in proceeding on which action is based.* In an action for malicious prosecution on the charge of violation of an injunction, the only purpose for which the record of the proceeding in the injunction suit would be admissible in evidence would be to show the termination of the litigation, and it should be so limited.

3. MALICIOUS PROSECUTION—*when directed verdict properly refused.* In an action for malicious prosecution, where the Appellate Court cannot say that the evidence on the part of appellee, taking it to be true, together with all the inferences fairly to be drawn therefrom, would not make out a case for appellee, the trial court did not err in refusing to direct a verdict of not guilty.

4. INSTRUCTIONS—*when erroneous as not requiring consideration of all the evidence.* In an action for malicious prosecution, an instruction is erroneous which allows the jury to make its finding from the facts and circumstances given in evidence, without requiring the jury to take all of the evidence into consideration.

5. MALICIOUS PROSECUTION—*requisites of instructions on malice.* In an action for malicious prosecution, while there may be circumstances and conditions surrounding the proof of want of probable cause which will make such proof sufficient evidence to warrant the jury in finding malice without direct proof of same, still, before the proposition is submitted, the jury should be fully instructed as to what facts and circumstances would warrant them in making such finding.

6. MALICIOUS PROSECUTION—*question of probable cause as one of law.* While it is for the jury to determine the facts in any given case, what constitutes probable cause in an action for malicious prosecution is a question of law.

7. MALICIOUS PROSECUTION—*when instructions erroneous.* In an action for malicious prosecution, an instruction which directs the jury to find defendants guilty if they find the prosecution was

without probable cause without requiring the jury also to find them guilty of malice, is clearly erroneous.

8. MALICIOUS PROSECUTION—*when instruction on advice of counsel erroneous.* In an action for malicious prosecution, an instruction that for advice of counsel to afford any protection to defendants the jury must believe that the advice was sought in good faith, "and that a fair, full and true statement of all the facts was submitted to the counsel," was erroneous as it is only necessary that defendant give to his counsel a fair statement of all the facts and circumstances within his knowledge, or that reasonably might have been obtained by him at the time.

Appeal from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the March term, 1920. Reversed and remanded. Opinion filed October 28, 1920. *Certiorari* denied by Supreme Court (making opinion final).

WILLIAM E. WHEELER, for appellants; JESSE L. SIMPSON, of counsel.

GEERS & GEERS, for appellee.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

This is an appeal from a judgment rendered in the circuit court of Madison county for the sum of $1,500 in favor of Oby Dawson, appellee, against the St. Louis Smelting and Refining Company, Bob Collins and Tom Benson, appellants, in a suit for malicious prosecution.

The declaration consists of one count and, in substance, alleges that appellants caused the arrest and prosecution of appellee maliciously and without probable cause; the determination of the prosecution and damages to appellee's good name, etc.

In the summer of 1917, a number of employees of the St. Louis Smelting and Refining Company, hereafter termed the Smelting Company, went on a strike at its plant at Collinsville, Illinois. Various of these strikers, together with their sympathizers, assaulted,

threatened and otherwise intimidated persons working and desiring to work at the Smelting Company's plant. The conditions became such that the Smelting Company officials applied for and obtained from the United States District Court, Southern District of Illinois, an injunction or restraining order against its striking employees and others who were interfering with its work.

On October 11, 1917, after the above-mentioned restraining order had been issued, appellants Bob Collins and Tom Benson, two colored employees of said company, while on their way to work, were accosted within a few blocks of the company's property by a number of strikers who endeavored through threats and intimidation to cause them to cease working at the plant. Threats were made to club Collins and Benson because they refused to join in the strike, whereupon they ran and were pursued by the strikers. Appellee was driving a team of mules, drawing a wagon upon which was a hayrack, near where the strikers accosted the appellants. As to what took place thereafter the evidence is conflicting. Collins and Benson testified, in effect, that appellee started his team in a trot down Illinois Avenue in an attempt to cut off and stop them; that appellee succeeded in reaching the place where they intended crossing the street, and that he stopped his team and held out a pitchfork with the prongs pointed directly at appellants and called to the strikers in pursuit, "Tighten up on them boys. They shan't pass me." Collins had a pop bottle in his pocket which he drew and threw at appellee. The bottle struck the pitchfork, breaking in pieces and some of the pieces of which struck appellee's mules, causing them to take fright and run away. Appellants Benson and Collins further testified that they then ran and jumped over a fence onto the premises of said company; that the strikers and appellee pursued them to the wire fence, throwing stones, etc.;

that appellee was heard to say, "Run scabs" and "Come, Smith, come and we will get the sons-of-bitches"; that the dinner bucket of Collins caught in the fence as he was attempting to climb over it and that appellee took it and stamped it and threw it over the fence.  Appellee denies these acts and statements attributed to him and testified that he only stopped Benson and Collins and requested them to keep off of his premises; that Collins threw the pop bottle at him and it hit his mules, causing them to run away and throw him off the wagon; that he pursued the team and did not chase Benson and Collins or take any part in the acts of violence against them.  The record also discloses that Benson and Collins immediately reported to O. H. Baehler, one of the chief clerks at the plant, what they claimed had taken place.  Baehler reduced their statements to writing and later Benson and Collins returned and signed and swore to the statement.  This statement or affidavit was then delivered to Newman, the superintendent of said Smelting Company, by Baehler.  Newman claims to have read it over carefully and after due consideration to have forwarded the affidavit to one Fitzgerald, an attorney of Springfield, Illinois, who was chief counsel for said company.  Appellants Collins and Benson had worked for the company several years and were regarded as reliable and trustworthy employees.  Fitzgerald had been employed by the company on many occasions prior to this and was familiar generally with conditions at the plant and its unsettled labor situation.  Fitzgerald testified that he was advised by the Smelting Company to take no action against any of the striking employees unless in his judgment he felt the conditions warranted and the law so authorized.  Fitzgerald further testified that upon receiving said affidavit he showed the same to Judge Humphrey, the presiding judge of the United States District Court, and who had entered said restraining

order, and that the latter advised him that he should prepare a petition for attachment for appellee and others for violation of said restraining order. This was done and appellee was arrested, taken to Springfield, Illinois, and there held in jail for 3 days, until his hearing, when he was discharged. The present suit was then instituted, resulting in a verdict and judgment in favor of appellee as above set forth.

It is first contended by appellants that the court erred in its rulings on the evidence. The argument on this assignment of error is directed to the rulings of the court on the objection made by appellants to the record in the federal court finding appellee not guilty. The only purpose for which this record could be admissible would be for the purpose of showing a termination of the litigation. Appellants, however, are not in position to urge this assignment of error for the reason that in making objection to said record, it was stated that the objection was made only for the reason stated that the restraining order entered by the court was not offered in connection with the record. As this case will have to be tried again for reasons hereafter stated, we think it well to state that the only purpose for which this record could at all be admissible in evidence would simply be to show a termination of the litigation, and it should be so limited. *Skidmore v. Bricker,* 77 Ill. 167.

It is next urged by appellants that the court erred in refusing to exclude the evidence and to instruct the jury to find appellants not guilty on the motion made by them for that purpose at the close of the appellee's evidence and again at the close of all the evidence. Without going into a discussion of the evidence in the record will say that we are not prepared to hold that the evidence on the part of appellee, taking the same as true, together with all the inferences fairly to be drawn therefrom, would not make out a case for appellee. This being true, the

court did not err in refusing to direct a verdict of not guilty.

It is next insisted by appellants that the court erred in giving the second, fourth, fifth and sixth instructions given on behalf of appellee.

The second instruction is erroneous in that it allows the jury to make its finding from the fact and circumstances given in evidence without requiring the jury to take all of the evidence into consideration. The instruction is further erroneous for the reason that it allows the jury to find that the appellants were guilty of malice from proof of want of probable cause in instituting the litigation in question. While there may be circumstances and conditions surrounding the proof of want of probable cause in bringing litigation, constituting sufficient evidence to warrant a jury in finding malice, without direct proof of the same, still before that proposition should be submitted to them, the jury should have been fully instructed as to what facts and circumstances would warrant them in making a finding that malice existed in the prosecution.

While it is for the jury to determine the facts in any given case, what constitutes probable cause is a question of law. *Angelo v. Faul,* 85 Ill. 106; *Wade v. Walden,* 23 Ill. 425; *Cleveland, C., C., & St. L. Ry. Co. v. Jenkins,* 75 Ill. App. 17; *Young v. Lindstrom,* 115 Ill. App. 239.

In *Harpham v. Whitney,* 77 Ill. 32, the court on page 38 says: ''To maintain an action for malicious prosecution, it must appear that there was not probable cause for the prosecution, and also that the defendants were actuated by malice in instituting the prosecution. There must be both want of probable cause and malice. If the law imputed malice from want of probable cause, then there would be no distinct requirement of malice, but want of probable cause would be the sole element necessary. It is often said,

the jury may infer malice from the want of probable cause. They may do so under certain circumstances, but not in all cases. Malice is in no case a legal presumption from the want of probable cause, it being for the jury to find from the facts proved, where there was no probable cause, whether there was malice by showing facts and circumstances calculated to produce at the time, on the mind of a prudent and reasonable man, a well-grounded belief or suspicion of the party's guilt."

The court erred in giving appellee's second instruction.

Instruction No. 4, given on behalf of appellee, is as follows: "The Court instructs the jury that, if you believe, from a preponderance of the evidence, that the defendants, the St. Louis Smelting and Refining Company, through its agents, in the course and scope of their general authority, and Bob Collins and Tom Benson, acted in concert and collusion with each other to procure the arrest of the plaintiff on the charge of violating an injunction or restraining order of the United States District Court, without having probable or reasonable cause, as explained in these instructions, for believing that the plaintiff was guilty of such offense, then the jury should find all the defendants guilty." This instruction is clearly erroneous for the reason that the jury are directed to find appellants guilty without finding them guilty of malice. The question of malice in this instruction is entirely ignored and appellants are made liable if they prosecuted the suit against appellee in the federal court without probable cause. This instruction was a peremptory instruction and was not remedied by other instructions given. *Harpham v. Whitney, supra.*

Instruction No. 5, in our judgment, does not state the law correctly in that it states, among other things, "in order to render the advice of counsel any pro-

tection in this suit to the defendants, the jury must believe, from a preponderance of the evidence, that such advice was sought in good faith, and that a fair, full and true statement of all the facts was submitted to the counsel." We are of the opinion that it is not necessary, in order that the advice of counsel may avail a defendant in a suit for malicious prosecution, that he should have given counsel a full and true statement of all the facts in the case. It is only necessary for him to give to his counsel a fair statement of all the facts and circumstances within his knowledge, or that might be reasonably obtained by him at the time.

In *Neufeld v. Rodeminski*, 144 Ill. 83, the court at page 88 says: "The law upholds and favors prosecutions under the public laws of the land, and shields and protects parties instituting them in good faith and from proper motives. So where a party consults with counsel of good standing, and lays before him fully the facts within the party's knowledge, and then acts in good faith and in the honest belief that the party charged is probably guilty of the criminal offense, he will not be held responsible if it shall turn out that the party is not guilty."

What we have already said in connection with instruction No. 5 will also apply to instruction No. 6. We think, in view of the holding of our Supreme and Appellate Courts, both of said instructions require too severe a test for the admission of proof of advice of counsel in a suit for malicious prosecution.

It is also contended that the court erred in refusing to give appellants' refused instructions 1, 2 and 3. Appellants' refused instructions 1 and 2 do not state correct principles of law and the court did not err in refusing the same. Refused instruction 3, so far as the same states correct principles of law, is covered by instructions given on behalf of the appellants.

Lastly, appellants claim that the verdict of the

jury' is excessive. In view of the fact that the case is to be retried, the court will not pass on that question.

For the reasons above set forth the judgment of the trial court will be reversed and the cause will be remanded.

*Reversed and remanded.*